Filed 8/31/22; certified for publication 9/20/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re R.O., a Person Coming Under the Juvenile Court Law. | C094816 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | (Super. Ct. No. STK-JV-DP-2011-0000014) |
| Plaintiff and Respondent, | |
| v. | |
| A.I., | |
| Defendant and Appellant. | |

Without notice to appellant A.I., mother of the minor R.O., the juvenile court followed its usual practice of converting what was scheduled as a contested jurisdictional confirmation hearing into an uncontested jurisdictional hearing because mother did not appear as ordered. It did so over mother's counsel's objection. This routine practice denied mother her due process rights. We therefore reverse and remand the matter for a new jurisdictional hearing.

1

FACTUAL AND PROCECURAL BACKGROUND

A.    *The petition*

On March 4, 2021, the San Joaquin County Human Services Agency (Agency) filed the instant petition on behalf of the minor alleging he came under the jurisdiction of the juvenile court through Welfare and Institutions Code section 300, subdivisions (b)(1), (c), (g), and (j).[1]  The petition alleged mother had a history of substance abuse and violent relationships, placing the minor at risk for abuse and neglect.  The petition identified two prior incidents of reported domestic violence in 2021 and two in 2019.  The petition also stated that allegations in three prior petitions were sustained on behalf of mother's children:  one on behalf of the minor in 2011, and two on behalf of the minor's half siblings in 2006 and 2004.

At the March 5, 2021 detention hearing, the clerk's minutes reflect the juvenile court ordered mother to attend drug court.  There is, however, no direct order from the juvenile court in the reporter's transcript requiring mother to attend drug court.

Instead, the reporter's transcript shows the juvenile court asked if the mother was "interested in getting propped today," and mother responded in the affirmative.[2]  The juvenile court noted that "[i]f we take jurisdiction, I am going to order drug court." Counsel responded, "She wants to be propped today."  The juvenile court then ordered the minor detained.  In its concluding comments, the judge stated, "Sign any documents. Follow [the social worker's] direction, refrain from alcohol and drugs, and test, and attend and successfully complete the program."

On March 25, 2021, the juvenile court set the matter for a contested jurisdictional hearing on April 30, 2021, and ordered, on the record, that mother appear.

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

[2]    This appears to be a reference to participation in the Drug Court Parental Recovery Options Plan (PROP) program.

B.    *Jurisdictional and dispositional hearings*

On April 13, 2021, the Agency filed a jurisdiction report setting forth some of the facts underlying the 2004, 2005, and 2011 petitions.  The report identified the exhibits the Agency intended to submit at the contested hearing (exhibits A through U) and attached several of those exhibits (exhibits A through K), but omitted the remaining exhibits, representing it would bring them to the contested hearing.

On April 20, 2021, the juvenile court relieved mother's counsel due to a conflict; appointed new counsel; vacated the April 30 contested jurisdictional hearing date; and set the matter for further proceedings on May 4, 2021.

There is no reporter's transcript for the May 4, 2021 hearing.  According to the clerk's minutes, mother appeared without her court-appointed counsel, and another attorney specially appeared on her behalf.  The clerk's minutes also state that the juvenile court set the matter on May 25, 2021, "for Confirmation," and on June 11, 2021, for "Contested JURIS."  The minutes also state, "Mother ordered present on 05/25/2021 and 06/11/2021."  The record is silent as to any instruction or admonition given to mother concerning the consequences of any failure to appear.

Mother did not personally appear at the May 25, 2021 confirmation hearing, but her counsel was present.  Judge Soldati presided over the hearing.  Mother's counsel confirmed the jurisdictional hearing for June 11.  The Agency's counsel told Judge Soldati, "Usually Judge Alva doesn't [confirm the matter for a contested hearing] if the parent doesn't show up for the confirmation."  When Judge Soldati inquired about his usual practice in this instance, counsel responded, "He usually just goes forward on jurisdiction."  At mother's counsel's request, the clerk confirmed mother was ordered to be present at the prior hearing.

The Agency's counsel and counsel for the minor asked the juvenile court to proceed.  Mother's counsel stated, "I would object to proceeding, Your Honor."

3

Despite counsel's objection, the juvenile court conducted an uncontested jurisdictional hearing, stating:

"The court has read and considered the petition and attached documents. The court finds notice has been given as required by law. Good cause appearing, the court finds that a prima facie case has·been made and the children named in the petition are persons described by . . . section 300.

"Because there is a substantial danger to the physical and emotional health of the children, there is no reasonable means by which the children's physical or emotional health may be safeguarded without removal.

"Furthermore, the court finds reasonable efforts have been made to prevent or eliminate the need for removal, that·the children continuing residence in the home of a parent or guardian is contrary to the welfare—to the children's welfare under California Rules of Court[, rule] 5.678.

"The children are ordered detained and temporarily placed in the care of the Department of Social Services pending disposition or further order of the court."

Contrasted with the juvenile court's oral pronouncement, the clerk's minutes issued after the hearing go on to state:

"The Court finds by clear and convincing evidence: Reasonable efforts/due diligence to locate and serve the parents have been attempted. The parents could not be located or served, therefore, the Court proceeds in their absence.

"Court Finds Allegations of Petition true, that the Minor(s) come(s) within the provisions of W&I 300 BCGJ.

"The Minor(s) birth date(s) area [*sic*] as stated in the petition, and they are residents of San Joaquin County.

"All prior orders not in conflict with today's orders remain in full force and effect."

The juvenile court then set the matter for a dispositional hearing on July 13, 2021.

4

On July 7, 2021, the Agency filed a disposition report recommending the juvenile court bypass mother for services, citing section 361.5, subdivision (b)(10), (11) and (13). Under subdivision (b)(10) and (11), the Agency identified the 2006 petition; the mother's failure to complete the components of her court ordered case plan; and the termination of services and her parental rights for half siblings H.F. and An.S.

The minutes for the July 13, 2021 hearing indicate that mother "failed to appear," although the reporter's transcript did not reflect whether she appeared. However, at the following hearing, mother's counsel represented mother had been present on July 13, and no one stated otherwise. The dispositional hearing was continued one week to July 20, 2021. Mother did not appear at that hearing. Mother's counsel opposed the report, but did not object to proceeding with disposition in mother's absence. The juvenile court adopted the findings and orders contained in the disposition report. The juvenile court denied mother's reunification services pursuant to section 361.5, subdivision (b)(10) and (11).[3]

Mother appeals.

## DISCUSSION

Mother contends the juvenile court violated her due process rights when it denied her a contested hearing at the jurisdictional stage. Because we conclude the juvenile court improperly converted the confirmation hearing into an uncontested jurisdictional hearing, over counsel's objection, and the record demonstrates no appropriate notice to mother, we will reverse and remand. Thus, we do not reach mother's contention the juvenile court erred in bypassing her for services.

---

[3]     In the written findings submitted by the Agency and adopted by the juvenile court, the Agency listed section 361.5, subdivision (b)(13) as a separate basis for denying services to mother. The juvenile court's oral ruling omitted any reference to subdivision (b)(13).

Before a child is removed from his or her parent's care, the parent has the fundamental right to adequate notice and the opportunity to be heard. (*In re Stacy T.* (1997) 52 Cal.App.4th 1415, 1424.) This right "has little, if any, value unless the parent is advised of the *nature* of the hearing giving rise to that opportunity, including what will be decided therein. Only with adequate advisement can one choose to appear or not, to prepare or not, and to defend or not." (*Ibid.*, original italics.)

In *In re Stacy T.*, while at the detention hearing, the juvenile court ordered the mother to appear at a settlement conference. (*In re Stacy T., supra*, 52 Cal.App.4th at p. 1420.) When the mother did not appear at the settlement conference, the juvenile court entered the mother's default over the objection of her counsel. (*Id.* at pp. 1420-1421.) The juvenile court converted the settlement conference into a jurisdictional and dispositional hearing and made findings against the mother. (*Id. at* p. 1424.) Before the settlement conference, the mother was not informed of the consequences of her failure to appear, nor was her counsel permitted to cross-examine the social workers who prepared the reports used to make findings against her because the juvenile court found the mother in default. (*Id.* at pp. 1424, 1426.) The appellate court concluded the juvenile court's actions deprived the mother of due process and this violation was not harmless because had the mother been informed, the conference could have accelerated into a jurisdictional hearing and she would likely have appeared. (*Id.* at p. 1426.) If she had appeared, she could have testified on the relevant issues. (*Ibid.*) Further, if the matter did not proceed as an uncontested matter, counsel could have cross-examined the social worker. (*Id.* at p. 1425.)

Similarly, in *In re Nemis M.* (1996) 50 Cal.App.4th 1344, on the fifth day of a contested trial, the parents left the courthouse without the juvenile court's permission. The father claimed to have chest pains, so he had his wife drive him home. (*Id.* at p. 1351.) The father did not wish to be present at the hearing on the next court day and the juvenile court proceeded by way of default over his attorney's objection. (*Ibid.*) The

6

appellate court held: " 'Entry of default is not authorized where an answer is on file, even if the defendant fails to appear at the hearing. [Citations.]' [Citations.] 'The consequences of a parent's failure to appear at a scheduled hearing . . . do not include the deprivation of the due process right to confront and cross-examine witnesses.' (*In re Dolly D.* (1995) 41 Cal.App.4th 440, 446.)" (*In re Nemis M., supra*, at p. 1352.) Based on this denial of constitutional due process, the appellate court reversed the jurisdictional and dispositional orders. (*Id*. at p. 1355.)

Finally, in *In re Wilford J.* (2005) 131 Cal.App.4th 742, the juvenile court provided the father with notice of a pretrial resolution conference; advised him of his right to attend to present evidence; to be represented by an attorney; and that the juvenile court may proceed in his absence. The notice did not otherwise inform the father the hearing was a pretrial resolution conference or provide any description of what would happen at the hearing. (*Id*. at p. 746.) When the father did not appear, the juvenile court converted that pretrial resolution conference hearing into a jurisdictional hearing and found the allegations in the petition true. (*Id*. at p. 747.) The appellate court agreed the juvenile court violated the father's fundamental right to adequate notice in the dependency proceeding by conducting the jurisdictional hearing that had not been scheduled or properly noticed, and this action "deprive[d] parents of vitally important procedural protections that are essential to ensure the fairness of dependency proceedings." (*Ibid*.) The appellate court went on to conclude, however, that father's failure to timely object and his participation in hearings after the jurisdictional hearing forfeited the objection. (*Id*. at pp. 747, 754.)

Here, mother requested a contested jurisdictional hearing at the March 25, 2021 hearing. At this first request, the juvenile court set only a jurisdictional hearing on April 30, 2021. Notably, it did not set a "confirmation hearing" prior to that first jurisdictional hearing.

Due to the withdrawal of counsel, the juvenile court vacated the original date. On May 4, 2021, the juvenile court set the matter on May 25, 2021, "for Confirmation," and on June 11, 2021, for "Contested JURIS." Thus, the record demonstrates mother was notified that the May 25, 2021 hearing was merely a confirmation hearing, and the contested jurisdictional hearing would be held two weeks later. Further, nothing in the minutes of the May 4, 2021 hearing establishes that the juvenile court informed mother of any consequences she might face if she failed to attend the confirmation hearing. Specifically, the record does not show the juvenile court, counsel, or even a local rule, advised mother that the hearing could be immediately transformed from a confirmation hearing to an uncontested jurisdictional hearing during which the juvenile court could make findings against her. This dearth of information is consistent with the scant information imparted to mother at any of the hearings prior to this one. For example, at the March 25, 2021 hearing at which the first jurisdictional hearing was set, the full instructions of the juvenile court to mother were, "Mother is ordered present."

Thus, we conclude mother was not placed on notice that this "confirmation hearing" would or could be converted into an uncontested jurisdictional hearing if she failed to appear. Instead, that hearing was set to ensure that the parties were ready to go forward and mother's counsel responded in the affirmative to this question.

Mother raised a timely objection to the juvenile court's spontaneous transformation of the confirmation hearing into an uncontested jurisdictional hearing. After mother's counsel confirmed mother was ready for the June 11 contested hearing, the Agency's counsel informed the juvenile court if a parent did not appear at the confirmation hearing, the juvenile court's general practice is to not confirm the contested hearing, but to go forward on the jurisdictional hearing as an uncontested matter. In light of this attempt to deny mother her right to a contested hearing, mother's counsel objected to proceeding. Despite her timely objection, the juvenile court proceeded to make findings in an uncontested jurisdictional hearing; findings that were inexplicably

8

amplified in the clerk's minutes. In so doing, the juvenile court deprived mother of her right to a contested jurisdictional hearing, including her right to testify and confront witnesses.

We cannot conclude this error was harmless beyond a reasonable doubt. (See *In re Vanessa M.* (2006) 138 Cal.App.4th 1121, 1132 [constitutional due process violations in the dependency context require application of the harmless beyond a reasonable doubt standard].) Mother could have provided the juvenile court with context concerning the allegations of the petition and her current sobriety and state of her relationships. Mother's counsel also could have cross-examined the social worker on the contents of the jurisdiction report or offered other evidence on mother's behalf.[4]

## DISPOSITION

The juvenile court's jurisdictional and dispositional orders are reversed and the matter is remanded with directions to the juvenile court to conduct a contested jurisdictional hearing.[5]

          KRAUSE          , J.

I concur:

     HULL          , J.

---

[4] Unlike the father in *In re Wilford J., supra*, 131 Cal.App.4th at pages 746 through 747 and 754, mother did not waive this objection by participating in this case after the jurisdictional hearing. While counsel represented to the juvenile court on July 20, 2021, that mother was at the July 13, 2021 hearing, neither the minutes of that hearing nor the reporter's transcript support that statement. Mother appeared at no other hearings in this case.

[5] Upon remand, the question of jurisdiction must be answered as of the date of the jurisdictional hearing. (*In re J.M.* (2019) 40 Cal.App.5th 913, 921.)

ROBIE, P.J., Concurring.

I am in complete agreement with this opinion.  I write separately to point out in this case the courtroom clerk embellished the trial judge's oral ruling with actions the judge did not take.  This practice is wrong.  Courtroom clerks must faithfully reflect in the minutes what actually happened *and nothing more*.


     ROBIE     , Acting P. J.

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----


| | |
|---|---|
| In re R.O., a Person Coming Under the Juvenile Court Law. | C094816 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.I.,<br><br>Defendant and Appellant. | (Super. Ct. No. STK-JV-DP-2011-0000014)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |


APPEAL from orders of the Superior Court of San Joaquin County, Jose L. Alva, Judge. Reversed and remanded with directions.

Katie Curtis, under appointment by the Court of Appeal, for Defendant and Appellant.

Shann Kennedy, Deputy County Counsel, for Plaintiff and Respondent.


1

THE COURT:

The opinion in the above entitled matter filed on August 31, 2022, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports, and it is so ordered.

BY THE COURT:


_____ROBIE_____, Acting P. J.


_____HULL_____, J.


_____KRAUSE_____, J.

2